*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

GERARD ANTHONY SHIPLEY,

Defendant-Appellant.

UNPUBLISHED
March 10, 2020

No. 346463
Grand Traverse Circuit Court
LC No. 18-013035-FH

Before: BOONSTRA, P.J., and RIORDAN and REDFORD, JJ.

PER CURIAM.

Defendant appeals by right his bench-trial conviction of aggravated stalking, MCL 750.411i. The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to a prison term of 2½ to 10 years. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Sometime before 2016, PO allowed defendant to move into her home, because defendant had health issues and PO feared that defendant would be homeless. PO testified at trial that she had originally planned to have defendant stay with her for six months to a year to recover from cardiac surgery, but that because defendant developed a foot infection requiring amputation, she allowed him to stay longer. PO also testified that defendant abused alcohol. In 2016, PO asked defendant to leave her home; PO testified that defendant refused to leave and responded with threats to burn down the house with PO in it and to throw her body into a lake.

PO initiated eviction proceedings, and defendant was evicted from PO's house. PO also obtained a personal protection order (PPO) against defendant. The PPO permitted defendant to provide PO (by mail) a list of any personal property that he wished to retrieve, but defendant did not do so. After a month had passed, PO donated or discarded the property that defendant had left at her house. Later in 2016, PO saw defendant outside her house, lying on the road and covered with a tarp from PO's garage. Several other items determined to be missing from PO's garage were found in defendant's possession. Defendant also entered PO's kitchen and retrieved items without PO's permission. When PO tried to call the police, defendant chased her around the kitchen to get the phone out of her hands. Defendant was arrested and ultimately pled guilty to

-1-

misdemeanor stalking. PO also testified that while the PPO was in effect, defendant sent "friend requests" on Facebook to PO and PO's son-in-law, daughter, and grandson.

After the PPO expired on June 21, 2018, defendant called PO and stated that he wanted to get "his stuff." PO testified that he had called her 15 times using two different numbers requesting his personal property back, that she had asked him not to call her, and that she had informed the police about the calls. A police officer who spoke with defendant testified that defendant was aware that PO had asked him not call her. PO testified that she has had anxiety because of defendant's actions, and that she had to increase her blood-pressure medication dosage and suffered from depression. PO also testified that she had nightmares about defendant stabbing her, because he carried knives.

Defendant testified and admitted to threatening to hurt PO in 2016 and to pleading guilty to stalking. Defendant testified that after he got out of jail in 2018, he contacted PO to retrieve personal items that belonged to defendant's father.

The prosecution presented evidence that defendant had previously been incarcerated as a result of assaulting PO in 2009 and 2011, and had on separate occasions threatened to kill PO and burn down her house. Defendant was convicted as described. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that his trial counsel was ineffective for requesting a bench trial and for failing to challenge the admission of other-acts evidence under MRE 403. A claim of ineffective assistance of counsel presents a "mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review de novo a trial court's findings of fact, and review de novo questions of constitutional law. *Id*. Because no *Ginther*[1] hearing was held, our review is limited to the existing record. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000).

To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012), citing *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). Counsel is not required to make futile objections. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004). The defendant "bears the burden of establishing the factual predicate for his claim." *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015) (quotation marks and citation omitted).

Defendant argues that defense counsel was ineffective for seeking a bench trial in order to minimize the prejudice arising from the admission of evidence of his prior acts of domestic

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

violence. We disagree. In the final pretrial conference, defense counsel requested a bench trial, instead of a jury trial. Defense counsel stated the reasons for a bench trial as follows:

> Judge, I am moving that we have a judge trial in this case and I have talked with the Prosecutor and the Prosecutor stipulated that we would have a judge trial and I know this is up to you and so it is left up to you and, judge, the reason why I want a judge trial is because some priors are going to come in and I think that if I can get a judge trial when the priors come in, I think I have a better chance of the fact finder listening to me instead of paying so much attention to the priors that anything about the defense here in this particular case gets diluted and I think with a judge trial I think that you are going to be able to listen, you, to the facts, you, any judge would be able to listen to the facts, take the priors and put them whatever appropriate spot the fact finder wants that and then to be able to clearly listen to the facts and then when they deliberate, they, you, when you deliberate, you will take that into consideration as I would want a jury to take it into consideration.

> However, with the jury I know that it blends in with everything else and it is difficult for me then to distinguish between past bad behavior and this bad behavior.

> Anyway, I talked with [the prosecutor] and I think that he agrees that this would be a fairer trial for a judge trial and, therefore, that's why we are asking, Judge.

> I have talked with Mr. Shipley about that. He understands that he has a right to a jury trial. He understands that with knowing that he has a right to jury trial, I have discussed with him the effects of the jury with past bad behavior and he would like a judge trial, also.

The trial court, in response, asked defendant if it is "true" that defense counsel had discussed the strategy of having a bench trial, and defendant replied, "That is correct, your Honor." Defendant also acknowledged that he had "been fully advised about the advantages and disadvantages" of his decision to waive a jury trial.

In order to prove ineffective assistance of counsel, "the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). "This Court does not second-guess counsel on trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Foster*, 319 Mich App 365, 391; 901 NW2d 127 (2017).

Defendant has not overcome the presumption that his trial counsel's decision to seek a bench trial was sound trial strategy. Defense counsel explained on the record that, given that defendant's prior acts of domestic violence would be put into evidence, a judge was better suited than a jury to draw a distinction between that evidence and evidence supporting his current charge. Although unsuccessful, in that it did not result in his client's acquittal, defendant has not shown that this strategy was objectively unreasonable. *Trakhtenberg*, 493 Mich at 51. Additionally,

defendant has also failed to show how the outcome through a jury trial would have been different, in light of the significant evidence supporting his conviction. See *Carbin*, 463 Mich at 600.

Defendant also argues that his trial counsel was ineffective for failing to challenge the admission of evidence of his prior acts of domestic violence on the ground that it was more prejudicial than probative. We disagree.

MCL 768.27b(1) provides, in relevant part:

[I]n a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of *domestic violence* or sexual assault *is admissible for any purpose for which it is relevant*, if it is not otherwise excluded under Michigan rule of evidence 403. [Emphasis added.]

Further, MCL 768.27b(6)(a) defines domestic violence as follows:

(a) "Domestic violence" or "offense involving domestic violence" means an occurrence of 1 or more of the following acts by a person that is not an act of self-defense:

(*i*) Causing or attempting to cause physical or mental harm to a family or household member.

(*ii*) Placing a family or household member in fear of physical or mental harm.

(*iii*) Causing or attempting to cause a family or household member to engage in involuntary sexual activity by force, threat of force, or duress.

(*iv*) *Engaging in activity toward a family or household member that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested.* [Emphasis added.]

Additionally, MCL 768.27b(6)(b) defines family or household member as follows:

(b) "Family or household member" means any of the following:

(*i*) A spouse or former spouse.

(*ii*) *An individual with whom the person resides or has resided.*

(*iii*) An individual with whom the person has or has had a child in common.

(*iv*) *An individual with whom the person has or has had a dating relationship.* As used in this subparagraph, "dating relationship" means frequent, intimate associations primarily characterized by the expectation of affectional involvement. This term does not include a casual relationship or an ordinary

fraternization between 2 individuals in a business or social context. [Emphasis added.]

When defendant assaulted PO in 2009 and 2011, and stalked and threatened PO in 2016, PO was a member of defendant's household, and they had a previous dating relationship. Under the language of the statute, defendant engaged in acts of domestic violence against PO, and these acts were clearly admissible under MCL 768.27b.

However, even if admissible, evidence of prior acts of domestic violence may be excluded under MRE 403. See MCL 768.27b(1). MRE 403 permits a trial court to exclude relevant evidence if its probative value is substantially outweighed by the risk of unfair prejudice. See *People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011) (quotation marks and citation omitted). Unfair prejudice "refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *Id.* (quotation marks and citations omitted). Admission of evidence is unfairly prejudicial when the danger exists "that marginally probative evidence will be given undue or preemptive weight by the jury." *Id.* (quotation marks and citation omitted.)

In this case, nothing in the record supports the conclusion that the other-acts evidence would adversely affect defendant's position by injecting considerations extraneous to the merits of the lawsuit. *Id.* Defendant's 2016 stalking conviction and other prior domestic violence acts were relevant to the prosecutor's aggravated stalking charge under MCL 768.27b, and any prejudicial effect would not have substantially outweighed the probative value of the evidence. Further, the trial judge was well aware of the prosecution's burden to prove beyond a reasonable doubt that defendant had committed the acts that led to his current charge. See *People v Sherman-Huffman*, 466 Mich 39, 42-43; 642 NW2d 339 (2002) (noting "the presumption that a trial judge in a bench trial knows the applicable law").

Because evidence of defendant's prior acts of domestic violence was admissible under MCL 768.27b and was not otherwise excludable under MRE 403, his counsel was not ineffective for failing to challenge its admission. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

## III. SUFFICIENCY OF THE EVIDENCE

Defendant also argues that the evidence was insufficient to sustain his aggravated stalking conviction. Specifically, defendant argues that there was insufficient evidence to conclude that he did not act with a legitimate purpose or that a reasonable person would have suffered emotional distress. We disagree.

This Court reviews de novo a defendant's challenge to the sufficiency of the evidence to support his or her conviction. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). "Due process requires that the prosecutor introduce sufficient evidence which could justify a trier of fact in reasonably concluding that defendant is guilty beyond a reasonable doubt before a defendant can be convicted of a criminal offense . . . ." *People v Hampton*, 407 Mich 354, 368;

285 NW2d 284 (1979). "In examining the sufficiency of the evidence, this Court reviews the evidence in a light most favorable to the prosecut[ion] to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012) (quotation marks and citation omitted).

"Aggravated stalking consists of the crime of stalking . . . and the presence of an aggravating circumstance . . . ." *People v Threatt*, 254 Mich App 504, 505; 657 NW2d 819 (2002) (quotation marks and citations omitted). "Stalking" is defined as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411(1)(e). A "[c]ourse of conduct" is "a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose." MCL 750.411i(1)(a).

Conduct is considered harassment if it is "directed toward a victim" and "includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress." MCL 750.411i(1)(d). However, harassment "does not include constitutionally protected activity or conduct that serves a legitimate purpose." *Id*. "Unconsented contact" is defined as "any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued." MCL 750.411i(1)(f). Unconsented contact may be by telephone. MCL 750.411(1)(f)(*v*) (emphasis added.)

Aggravating circumstances include when "[t]he course of conduct includes the making of 1 or more credible threats against the victim, a member of the victim's family, or another individual living in the same household as the victim," MCL 750.411i(2)(c), or the individual has previously been convicted of stalking the victim, MCL 750.411i(2)(d), see also *People v White*, 212 Mich App 298, 308; 536 NW2d 876 (1995).

The prosecution presented sufficient evidence to permit a reasonable trier of fact to conclude that defendant engaged in aggravated stalking. Defendant was previously convicted of stalking PO. Defendant admits that he engaged in two or more separate unconsented phone calls to PO. Although defendant argues that his phone calls were for the legitimate purpose of collecting personal property, the record shows that defendant previously had not availed himself of an opportunity to collect such property; further, PO testified that defendant called her more than 15 times from two different phone numbers and threatened to sue her if she did not return his calls. A police officer testified that defendant was aware that PO did not wish to be contacted by telephone. A reasonable fact-finder could find that defendant's conduct was not for the legitimate purpose of seeking to retrieve his belongings. MCL 750.411i(1)(d). Further, PO testified that because of defendant's previous assaults, threats, and stalking, defendant's phone calls caused her emotional distress. A reasonable fact-finder could find that defendant's phone calls, preceded by his history of threatening, abusing, and stalking PO, would cause a reasonable person to suffer emotional distress. *Id*.

There was sufficient evidence presented from which the trial court could have concluded beyond a reasonable doubt that defendant committed aggravated stalking, that his behavior was not for a legitimate purpose, and that PO reasonably suffered emotional distress as a result.

IV. OV 13

Finally, defendant argues that the trial court erred by assessing 25 points for offense variable (OV) 13 (continuing pattern of criminal behavior). Again, we disagree.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

"[OV 13] is continuing pattern of criminal behavior." MCL 777.43(1). A score of 25 points for OV 13 is appropriate when "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person[.]" MCL 777.43(1)(c). "For determining the appropriate points under this variable, all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). The sentencing court must assess zero points if "[n]o pattern of felonious criminal activity existed[.]" MCL 777.43(1)(g).

"A sentencing court is free to consider charges that were earlier dismissed, if there is a preponderance of the evidence supporting that the offense took place." *People v Nix*, 301 Mich App 195, 205; 836 NW2d 224 (2013) (citations omitted). That is, "a court may consider the charges against a defendant dismissed as a result of a plea agreement in scoring OV 13." *Id*. Further, "[b]y its plain language OV 13 allows the court to look beyond the sentencing offense." *Id*. at 206.

In 2016, defendant was charged with two felonies, aggravated stalking and first-degree home invasion. These charges were dismissed, and defendant pleaded guilty to a reduced charge of misdemeanor stalking. The PSIR and PO's testimony at defendant's trial support the trial court's findings that defendant committed these prior felonious acts against PO. Because the trial court has discretion to consider dismissed charges, *Nix*, 301 Mich App at 205, together with the sentencing offense, it did not err by finding a pattern of felonious criminal activity involving three or more crimes against a person under MCL 777.43(1)(c). *Hardy*, 494 Mich at 438.

Affirmed.

/s/ Mark T. Boonstra
/s/ Michael J. Riordan
/s/ James Robert Redford

-7-